Lookout Mountain Community Services. Mr. Sorkin is here for Langston. Mr. Green is here for Lookout. Mr. Sorkin, you may begin when you're ready. You may begin when you're ready. The first is whether the employer has done enough to claim state actor status under federal law. And the second is whether a reasonable juror could find that Ms. Langston was entitled to overtime compensation under the Fair Labor Standards Act. Now, this issue goes to the very beginning. At the motion to dismiss stage, the employer in this case filed a motion to dismiss on 1981 and 1983 and Title VII claims saying that they are a state actor, that they are covered by federal immunity, and that JET requires that we bring our case pursuant to 1983 relief, which is, as this Court acknowledges in Butts, the exclusive remedy against state actors. Now, our contention in this case has been the same throughout. We are contending that you are not yet a state actor until you first show us that the manders factors this Court established and applied in Miller apply to you. Now, at the motion to dismiss stage, there was not sufficient record to determine whether or not elements three and four weighed in their favor. They assumed the first two did. They were wrong about that when this Court decided in Miller and said, actually, the second factor weighs against you guys. And so the community service board in that case was found not to be an arm of the state. And so in that sense, they were a person. As the decision from last year called Edenfield decided, interpreting Miller said that they're a person under 1983. What do we do with the Georgia code that says community service boards are instrumentalities of the state and the Georgia Supreme Court's opinion in Youngblood v. Gwinnett? Judge Wilson, statutory authority itself is not enough. It doesn't sufficiently tangle the state with the entity. Now, the Ninth Circuit, if I may go to Judge Solomon's neighborhood and talk about this case of Kavanagh's where an individual brought a case, I guess a charter school. And the Arizona statute in that case also said because the statutory law says they are a public school and the attorney general considered them a public subdivision, they must also be a state actor. In that case, the Ninth Circuit said, no, that's not enough for the state to be entangled with the entity. You've got to do more to show that the state itself has given them the authority to act on its behalf, to wear the state's hat, as the Manders analysis talks about. But that is inherently a state law directed conclusion, is it not? In other words, we have to examine the Georgia statute in order to figure out what these boards are, how they're created, who pays judgments that are entered against them, who decides to hire and fire, that sort of thing. That's exactly right. That's what the Manders analysis does. The statutory authority question that Judge Wilson had had to go to the first Manders factor, which is how does the state of Georgia consider this entity under Georgia state immunity law? Now, the employer in this case cites the Youngblood, which is a Georgia Supreme Court decision throughout their briefing. And that decision in this court in Miller interpreted Youngblood to say that that is a matter of state immunity. And so it's fine that we get a presumption that they might be an arm of the state under Georgia state immunity. However, you cannot extend Georgia state immunity onto the federal. Aren't there really two different questions here? One is state immunity. But then there's also the question of whether you had to sue under Section 1983, which looks to whether it's a government versus a private actor rather than a state versus local government. Is that right? Those questions are entangled into each other. The question of whether or not you are a government entity or a state actor has to be asked and in unison. And so the Manders analysis considers whether or not you are a state actor for federal immunity purposes, first beginning with how does the state of Georgia consider these entities? Now, the entities are not off the hook at this point. They have to show the other three factors in Manders, which at the motion-dismiss stage are essentially impossible. I thought your argument is that in order to determine whether or not an entity is a state actor, we have to look to federal law and not state law. That's not correct? And we apply one of three tests, the public function test, the nexus joint action test, or the state compulsion test. The federal law controls what you just mentioned is another option for the employer. So if they can't prove that they are a state actor under Manders, there's a presumption that a person under 1983. And then they've got to show potentially that as a private entity, they can become transformed into a state actor, which is where those tests come in. And so they could have potentially showed that although we can't prove Manders, we can still show that as a private entity, we became a state actor in the way we conducted ourselves and the way that the state involved itself in our affairs. And in this case, what we know from Miller is that essentially these boards are at the very lowest point of the health services providers and what Collier called third-tier health providers. And because they're at third-tier, because there's the agency under the state, there's the regional boards, and there's community service boards who are kind of the subcontracts of being all of that, they essentially have removed themselves from state control. But they're not private actors. They're called public corporations. They are private actors in the way they conduct themselves. That is a presumption, and they have the burden to prove that they are not. And so they're essentially beginning with – we began with the assumption that they are private actors. We treated them like private actors all the way back to our complaint. They told us that they are state actors, and we told them that they have to prove it through the Manders analysis. They refused to do so when Miller decided that they, in fact, are not arms of the state. And essentially what they did was they recycled the first Manders analysis and said that JET requires you to bring it pursuant to 1893, and we don't have to prove to you that we are state actors. But you would concede that notwithstanding your great argument here, if we conclude as a matter of law that they are a state actor, then the claim should have been filed under Section 1983 in light of JET. That's correct, and I guess the only thing we can do in that point is see if there's some kind of waiver, remedia, or if a congressional act has moved to remove them from that. But as far as we understand, if you rule that they are a state actor under the first Manders analysis, which is essentially how the Georgia Supreme Court and the legislative authority concedes them, then they would be a state actor. And then in the future, we would have to file claims against 1983. And this also goes straight into the Title VII issue. These two are entangled together. Their claim for why the Title VII issue should be dropped is because we didn't seek a right-to-sue letter from the Attorney General, which is required to sue governing units. And we're, again, contending that they're not a governing unit, and we don't need to get a letter to sue from the Attorney General. The EOC is sufficient. In regards to the Fair Labor Standards Act claim, Your Honor, the retaliation is the first one. Before we move to that, on the Title VII retaliation claim, did you fail to challenge the ground on which the district court based its judgment, which was abandonment? We did. And we tried to explain that their basis of abandonment has to do with the fact that we didn't respond to Jett. Now, we responded to Jett before this court trying to make it explicit that we don't need to respond to Jett's claim that we have to bring this pursuant to 1983 because they have not proven that they are a state actor for which that provision is provided. And so, essentially, we had to go around Jett and say that Jett and Butts said that although state actors do have this federal immunity opportunity, they have not proven that they get to take advantage of it until they prove that they are, in fact, a state actor or wearing a state hat. In regards to the Fair Labor Standards Act, the retaliation element is the only—the first one is the only one we're discussing in this case, which is the protected conduct. Now, lower court threw away Ms. Langston's claim saying that she could not have had an objective, reasonable belief that she was owed overtime compensation. And now they're based it on things like she signed away her rights under an exempt, non-exempt form. She essentially heard this information given to her during orientation. And the fact that she had these managerial duties should have suggested to her that she was, in fact, not entitled to overtime compensation. Well, she signed the form, did she not? She signed the form first saying she was a non-exempt employer. Now, there's a question of whether or not an individual could sign away their rights under the Fair Labor Standards Act. The case of Linz Fu talks about this. In the 1980s, a Supreme Court decision that has not been overruled. But the district court found that that was an uncontested issue of material fact, that coupled with the testimony of the orientation plus her signature on the waiver form, that no reasonable jury could find that she was not informed that she was an exempt employee. And she acknowledged that fact when she signed the form. Well, Judge Zellman, respectfully, her signing of the form creates an ambiguity. It does not create a definitive claim that she understood because she first signed as a non-exempt employee, suggesting to her that she was, in fact, owed overtime compensation. She was told, and this is where Linz Fu comes in, she was told by her supervisor to then sign the exempt box and signature it. Linz Fu talks about the disproportionate weight that employers have over their employees to sign away certain rights. And this is a prime example of that situation. So is this now a voluntariness or lack of understanding argument? Yes, Your Honor. Even though she signed the form, she didn't really understand what she was signing? She couldn't fully understand the gravity of what it meant to sign that form in respects to giving away her overtime compensation. But it really is a question of whether or not you're a manager or a supervised hourly employee, is it not? That's all an exempt employee means. Exempt employee means a lot of things, Judge Zellman, which is why it goes into the managerial duties and it goes into the bona fide exemption issue under the Fair Labor Standards Act. Did she testify that she didn't understand that she wasn't entitled to overtime after she signed that form? She did not understand that she was a non-exempt employee and she continued to ask for overtime compensation. I'm not sure of the record. There's an explicit statement from the very beginning that she believed she was non-exempt. Okay, but that would be her subjective belief and you said the district court decided it on what was objectively reasonable given the state of the record. Correct. So subjectively, they agreed that she did have a belief. Objectively, they go to the form and we're saying the form creates the ambiguity. The standard of view that the court should have applied and did announce at the very beginning of their brief was that all ambiguities and all just follow inferences are to be drawn in favor of the non-moving party. If we find that the form is ambiguous. Right, and the ambiguity in the form, again, is the fact that she first signed the non-exempt box, then she was told to sign the exempt box, and then she continued to operate as if she was owed overtime compensation through her myriad of complaints. In regards to orientation, Judge Zellman, that you mentioned, the orientation has no corroborating evidence that there was a discussion about whether or not she was exempt. There's obviously no way to tell if she heard this information, the mental impressions therein, and there's obviously no way to corroborate if this individual actually personally. What if she's not exempt? What if she's not an exempt employee? Can you still suffer retaliation for complaining about overtime wages if you're not entitled to overtime wages? Yes, Your Honor. You can? I think that if you have a viable claim under the retaliation if you're not owed, what the court did essentially is they stated this. You're not entitled to overtime wages, but you complain about it and you're fired. If you have. Do you have a retaliation claim? I believe you have a claim based on a good faith belief that your rights have been violated. Now, she was wrong, and the courts have acknowledged that even if she's wrong, she still has a protected conduct. Now, that goes to the second issue, which is whether or not she was owed compensation. Wait, stop. Protected conduct. What protected conduct? If the law says she's not entitled to overtime, then there is no protection for overtime. Judge Solomon, the protection is that she had a good faith belief that she was owed that, regardless that she was wrong about the law. But the law doesn't protect her on a claim that she's owed overtime when the law says she's not. That's a problem I'm having with your argument. And I think eventually that would go towards the second issue, whether or not she was owed. And so then you would have to look back potentially at the retaliation claim and treat that as an extension of the fact that she was not owed overcompensation. I'm not aware that there's any precedent out there that would establish that if you're not entitled to overtime wages, you still can have a claim for retaliation if you complain about not getting overtime wages. The way that I'm arguing this, Judge Wilson, is essentially if you have a claim for sexual harassment, for example, and you are found to not be sexually harassed, you still have a right to claim retaliation even though you're wrong about the underlying act. And so we're believing that FLSA gives her the right for overtime compensation based on the fact that she was a non-exempt employee. But, again, the retaliation claim we are treating separately, just like the lower court treats separately. Thank you. All right. Thank you. Mr. Sorkin, we'll hear from Mr. Green. Good morning, Your Honors, and may it please the Court. Lookout Mountain is a community service board set up by the Georgia Legislature to provide mental health services, disability services, and substance abuse services to the members of four counties in northwest Georgia, Catoosa, Chattooga, Walker, and Dade counties. I have four points that I'd like to make this morning. The first is about plaintiff's abandonment and waiver of arguments below and at this court. Second, Lookout Mountain's status as a state agency. Third, because it's a state agency, under Title VII, there are certain conditions precedent, and under 1981, a claim has to be brought under 1983. The fourth thing I'd like to discuss is FLSA retaliation and FLSA executive exemption. So Lookout Mountain filed a motion for summary judgment below and made an argument about Title VII and the conditions precedent. Plaintiff did not respond to that argument, and the district court found they had waived it. Now, in the appeal at this court, they didn't challenge that district court ruling below, so they've abandoned that argument again here. As to 1981, in response to Lookout Mountain's motion for summary judgment, plaintiffs spent six pages arguing that Lookout Mountain was not entitled to 11th Amendment immunity, and that's a different question than whether Lookout Mountain is a state agency. Georgia law, the Georgia legislature, as been mentioned, and the Georgia Supreme Court, have both unequivocally said that community service boards, like Lookout Mountain, are state agencies. Don't we look to federal law and not state law to determine whether or not a party is a state actor? Yes, Your Honor, but Manders v. Lee, the factors set forth in Manders v. Lee, look to whether it's an arm of the state for 11th Amendment purposes, 11th Amendment immunity, and this is a lower threshold, whether an entity is a state agency. And so I think a lot of deference should be given to the states because it's not 11th Amendment immunity in play. The same kinds of protections aren't offered to a state agency. It's merely a different condition precedent under Title VII. How do you get around our decision in Rayburn v. Hogue, our 2001 decision in Rayburn v. Hogue? You're a state actor under 1983 only if you meet one of those three tests, the state compulsion test, the public function test, or the nexus joint action test. Well, a community service board, I think, would pass possibly more than one of those tests, the public function test. In Youngblood, the Georgia Supreme Court said that CSBs were created as public entities or agencies to govern publicly funded programs which provide mental health, mental retardation, substance abuse, and other disability services, and that they were set up on a multi-county level to provide continuity of care through integration of county, area, regional, and state services for the disabled. So there certainly is a government function, and if you look at the statute that creates community service boards, you'll see that they share the characteristics of other state agencies. Employees at community service boards fall under the state employee benefit plan, including the state health benefit plan, which is only available to state employees. They fall under the state merit system for hiring and termination, and they fall under the state employee retirement plan. Property of community service boards is considered public property. They're not subject to local ad valorem, use tax, or sales tax. Community service boards must abide by the rules and regulations set by the state for hiring. So if an applicant comes into a community service board and wants a job, community service board, like Lookout Mountain, has to give that name to the state so they can do a background check, so they can do a driver history if they're going to be using state vehicles. And if there's a complaint made against a community service board, it has to be sent to the state so the state can decide whether another agency needs to investigate the community service board or whether it's something that can be handled internally. And community service boards also can purchase insurance through the Georgia Department of Administrative Services, which is only available to government entities to protect government entities and government employees from suit. So community service boards share virtually all the characteristics of other state agencies in Georgia. And I think a lot of deference should be given to state law, and that's why the Manders factors, you know, only the first one is really important here, how state law defines the entity. Because we're not asking for 11th Amendment immunity. And it's not a real shield against federal law. It's only that certain procedures and certain conditions precedent are necessary to bring suit. So Title VII says that when there's a state agency, the plaintiff must seek a letter from the attorney general as a condition precedent to suit. Lookout Mountain told plaintiff after they amended their complaint to add Title VII, Lookout Mountain told plaintiff you must get the letter from the attorney general. At least make some attempt. Some cases call for equitable modification, but only where some attempt, even a small attempt, has been made to get that letter from the attorney general. And Lookout Mountain told them immediately after they amended their complaint to add Title VII that they would need to get their right to sue letter from the attorney general. As for 1981, after they filed their complaint, we filed a motion to dismiss and said we're a state agency and a 1981 suit cannot be brought against us. The only way to vindicate rights from 1981 is through 1983. After that, they amended their complaint and they chose not to add 1983. So they doubled down on 1981. They made a strategic decision to do so. And after they've lost, they're saying we're not a state agency. I think the fact that the Miller case even got here and this court was even looking at whether community service boards were arms of the state is a clear indication that we're at least a state agency. At least a state agency. Now, as to FLSA, there's voluminous evidence in the record that Plaintiff was an exempt employee under the executive exemption. And I think today is the first time I've heard this argument that there's an argument that she signed away her rights.  The argument is she was exempt and the undisputed evidence clearly shows she was exempt. Can an employer force exempt status on a non-exempt employee? Can an employer force it? No, I think what has to happen is the court has to go through the factors for executive exemption and see if Plaintiff's actual duties fall under those exemptions. What if we do all of that and we make a determination that she is non-exempt, notwithstanding what she signed on that form? Then I think you have to remand if that's what you decide. But I think the evidence, the undisputed evidence, clearly shows she was an exempt employee. Plaintiff has also argued several times, both below and here, that Lookout Mountain... What if she is an exempt employee, but she still complains about overtime wages and she's fired as a result of complaining? Why can't she still bring a FLSA retaliation claim? So courts that have looked at this question, and I think the majority of courts in the Eleventh Circuit, and I cite a series of those cases in Pelley's brief at pages 46 and 47, where in this circuit, courts that have looked at it have said an employee cannot have an objective, good-faith belief that her complaint is valid if she's actually an exempt employee. And it's presumed, sort of a legal fiction is presumed, that the employee knows what the law is and correctly applies the law when she makes the complaint. And only when the employee is actually illegally classified as exempt, when she's actually non-exempt, can a complaint rise to the level of protected activity. So by signing the form, that's the end of the matter? No, I don't think that's the end of the matter at all. I think the court needs to look at her actual duties. I don't think the form has a lot to do with anything, to be honest. It only shows that plaintiff has claimed over and over, I didn't know I was exempt. Well, the form shows she did know she was exempt. That's really all that evidence shows. It's her actual duties that need to be looked at, whether she was actually an exempt employee. I thought it was also – I'm sorry. Go ahead. Going back to Judge Wilson's previous question, there's case law that says that an employee cannot be retaliated against if she protests an employment practice even though it's actually lawful. Are you saying there's a special rule for FLSA cases regarding exempt or non-exempt status? I think there's a split in this circuit, but I think the majority of cases find that if an employee actually is exempt, then she cannot have an objective good faith belief that her complaint is valid, and that's what the district court found as well. Does that authority consider the case law that says what I just said? In other words, is it resolved in the case law in any way in FLSA cases? These are all district court cases. I think the FLSA is different from a lot of other employment law where it makes a lot of sense to require the employee to actually be exempt for the complaint to be a protected activity. If not, you would have a flood of litigation, and it's a judicial economy thing as much as it's just sort of a common sense thing. If there's no underlying wrong where she's not misclassified, then the complaint is not a protected activity. I thought there were some statutory provisions such as the salary that she was paid on a weekly basis that we also look at plus the number of employees that she supervised. That's absolutely right. That's what I meant. Those are the factors that the court should look at to decide if she was an exempt employee. And those are factors that are set out in federal law under the Fair Labor Standards Act, are they not? Yes, Your Honor. There's four factors, whether the employee was paid the threshold salary, and that's undisputed in this case, whether her primary value was as a manager, and there's just voluminous evidence of this in the record, whether she customarily and regularly directed the work of two or more employees. I think that's undisputed in this case, too. And fourth, whether her suggestions as to hiring and firing were given a particular weight. And the record shows that everyone that she recommended for hiring was either hired or they attempted to hire. In fact, one employee she recommended shouldn't be hired because she didn't have enough experience, and Lookout Mountain hired her to work at a different house where she would be supervised by experienced personnel. So they really followed her recommendations each time. In fact, there's an email at tab 57-4, Exhibit 2N in Volume 2 of Appellee's Appendix, where she says to the Director of Recovery Services, I interviewed an applicant, I'm not sure if this applicant's good or will work out, and the Director of Recovery Services writes back, you're probably right, you might be right, but it's your decision if you want to hire or not. So plaintiff, her suggestions as to hiring or firing, it's undisputed that they were given particular weight and that she satisfies the factors for an exempt executive employee. There are no further questions? I see no further questions. Thank you, Mr. Green. Mr. Sorkin, you have reserved some time for rebuttal. Mr. Sorkin, could you address the question that I asked opposing counsel with regard to the statutory factors? Do you want to repeat that question? Yes. Don't we look to federal law under the FLSA and examine those four factors in order to determine from an objective standpoint whether your client is exempt or not exempt? That's correct. And the factors themselves, if we look at factors two and three, and we consider what the lower court did in this case, we show there has been a complete abuse of discretion in regards to how close they followed, how close they called the employer to the feet of Morgan. And this case in Morgan looked at… Wait, wait, I'm not sure I understand. Are you saying there's a disputed issue of material fact as to whether she met all four of those factors? I'm sorry. There's a misapplication of the standard of review in this case in regards to Morgan. So this case is cited in Morgan in regards to the Fair Labor Standards Act in regards to the exemption clause. And so there's the four duties that we talked about. The second one is the primary duty, and it has to be a fact-intensive inquiry, just like the state actor question, a fact-intensive inquiry that cannot be reduced to abstract. Is she disputing that she directed the activities of two or more coworkers at this private home for a disabled person that she was managing? There's two answers to that, Judge Solomon. First of all, she is disputing, yes, that she directed them in the way that she would have to direct them under that third element. So this is the third problem that you just referred to. And the reason why this is a problem is because in Morgan, they actually, Family Dollar actually offered payroll slips and affidavits, easily digestible affidavits, to show that these managers were actually overseeing these employees. In this case, the lower court essentially just said, no, we're going to go ahead and give high deference to the employer and say, yes, she directed these individuals because these individuals were there. And there's no proof of what is her actual oversight. And I'm afraid I don't have time to get into the second, but I appreciate your time. Thank you, counsel. Court is in recess until 9 o'clock tomorrow morning. All rise. Thank you.